## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **DELTA SIGMA THETA SORORITY, INC.,** | ) |
| 1707 New Hampshire Avenue, NW | ) |
| Washington, DC 20009 | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) Case No. _____ |
|  | ) |
| *v.* | ) |
|  | ) |
| **LETISHA D. BIVINS** | ) **JURY TRIAL DEMANDED** |
| 1260 Oxford Lane | ) |
| Naples, FL 34105 | ) |
|  | ) |
| **ALPHONSO D. GOINS** | ) |
| 1260 Oxford Lane | ) |
| Naples, FL 34105 | ) |
|  | ) |
| **FRATHOUSE CLOTHING, LLC** | ) |
| 1260 Oxford Lane | ) |
| Naples, FL 34105 | ) |
|  | ) |
|  | ) |
| *Defendants.* | ) |

_____)

## COMPLAINT

Plaintiff, Delta Sigma Theta Sorority, Inc. ("Delta" or "Plaintiff"), for its

Complaint against Defendants Letisha D. Bivins ("Bivins"), Alphonso D. Goins

("Goins"), and FratHouse Clothing, LLC ("FratHouse Clothing") (collectively,

"Defendants"), complains and alleges as follows:

### INTRODUCTION

1.     This is an action by Delta against Defendants to enjoin them from the

following continuing actions and activities, which have damaged Delta: (a) infringement

and counterfeiting of Delta's federally-registered and otherwise protected trademark and service mark rights (collectively "Marks"), by, *inter alia,* offering for sale and selling goods bearing Delta's Marks which are unauthorized and being marketed in an unauthorized manner; (b) unfair competition with Delta and its proper licensees in violation of the Lanham Act and common law; (c) injury to Delta's reputation and dilution of its Marks; (d) causing consumer confusion by falsely and knowingly holding themselves out as Delta licensees, when, in fact, they are not and have never been affiliated with Delta.

2.     Defendants should be (a) enjoined from continuing their infringement and dilution of Delta's Marks; (b) required to disgorge profits to Delta that they have realized from selling infringing merchandise and selling merchandise in an unauthorized manner; (c) required to compensate Delta for the damages it has suffered as a result of Defendants' unlawful use of Delta's Marks in accordance with applicable laws; and (d) required to pay reasonable attorneys' fees in light of Defendants' willful and egregious conduct.

**PARTIES**

3.     Delta is a not-for-profit, membership service organization that was founded in 1913 on the campus of Howard University and incorporated under the laws of the District of Columbia.   Its offices are located at 1707 New Hampshire Avenue, Washington, District of Columbia 20009.

4.     Defendant Bivins is an individual who, upon information and belief, resides at 1260 Oxford Lane, Naples, Florida 34105.   Upon information and belief, Bivins is a managing member and the Registered Agent of Defendant FratHouse

2

Clothing, a Florida limited liability company with its registered business address at 1260 Oxford Lane, Naples, Florida 34105.

5.      Defendant Goins is an individual who, upon information and belief, resides at 1260 Oxford Lane, Naples, Florida 34105. Upon information and belief, Goins is a managing member of Defendant FratHouse Clothing, a Florida limited liability company with its registered business address at 1260 Oxford Lane, Naples, Florida 34105.

6.      Defendant FratHouse Clothing is a Florida limited liability company with its registered business address at 1260 Oxford Lane, Naples, Florida 34105.  On information and belief, Defendant FratHouse Clothing is not authorized to transact business in the District of Columbia.

7.      At all times relevant to this litigation, Defendants have held themselves open for business in the District of Columbia via an Internet website located at www.frathouseclothing.com.  In transacting business and offering for sale merchandise bearing unauthorized and unlawful images of Delta's Marks, Defendants have caused and continue to cause injury to Plaintiff.

JURISDICTION AND VENUE

8.      This is a civil action for injunctive relief and damages based on trademark infringement and dilution under the federal statutory law and federal and District of Columbia common law.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, and 28 U.S.C. § 1338, because this action arises under the trademark laws of the United States.

9.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121(a) without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the District of Columbia claims asserted herein under principles of pendent and/or ancillary jurisdiction because such claims arise from a common nucleus of operative facts and are so intertwined with the federal claims before this Court as to make the exercise of pendent and/or ancillary jurisdiction appropriate.

11.     This Court has personal jurisdiction over Defendants under the District of Columbia's long arm statute, D.C. Code § 13-423, because Defendants regularly solicit business in the District of Columbia and engage in other persistent courses of conduct in the District of Columbia, including corresponding with residents of the District of Columbia about merchandise offered for sale at www.frathouseclothing.com and filling orders for merchandise ordered by residents of the District of Columbia through that website.  Defendants voluntarily and purposefully have directed their business activities at residents of the District of Columbia, and have caused injury in the District of Columbia by their acts and omissions outside of the District of Columbia.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants transact business in this district and because a substantial part of the events giving rise to the claims asserted herein arose in this district.

**FACTUAL BACKGROUND**

**_Reputation and Goodwill Are Important to Delta_**

13.     Delta is a well-established and highly regarded internationally recognized not-for-profit membership service organization that focuses on public service.  Delta was founded in 1913 on the campus of Howard University by twenty-two collegiate women who wanted to establish an organization that would serve as a vehicle for change within their individual communities and within the larger society.  Their first act was participating in the March 3, 1913 Suffrage March for Women's Right to Vote.  Delta was the only African American women's organization to participate in the March, and its presence raised Delta's profile and helped shape what the organization would become.  From this seminal act, Delta has remained a recognized leader at the vanguard of social change and cultural and educational advancement.

14.     Since its founding in 1913, Delta has been known to its members, other members of the National Pan-Hellenic Council (an umbrella organization of the nine African American Greek letter organizations), educational institutions, and the general public, not only by its official name "Delta Sigma Theta Sorority, Incorporated," but also as "Delta," "Delta Sigma Theta," "Delta Sorority," and "DST."  It also is known and recognized by its Greek letter symbols -- ΔΣΘ.  Any iteration of Delta's name and its Greek letter symbols is famous and recognized as belonging only to Delta, including its color combination with its founding year.

15.     Delta now has more than 900 collegiate and alumnae chapters located in forty-five states of the United States of America and the District of Columbia, as well as eight foreign countries.  Since its founding, Delta has grown to tens of thousands of dues-

paying members, and tens of thousands of other members who affiliate with Delta.  More than ten thousand members typically attend Delta's biennial national conventions, and each of seven regional conferences (held during the years when there is no national convention) typically hosts thousands of members.

16.     Delta's growth has increased its zeal to carry out its Founders' mission.  In 1956, Delta established a formal mechanism -- its Five Point Program Thrust --to provide service to a greater segment of society.   Its Five Point Thrust includes a program emphasizing: (1) economic development; (2) educational development, (3) international awareness and involvement, (4) physical and mental health, and (5) political awareness and involvement.  Delta's profile, name, reputation, and goodwill are continually being enhanced through such much-acclaimed public service programs.

17.     A short list of the hundreds of nationally acclaimed Delta members who remain active (or remained active until their death) highlights one of the reasons Delta so values its Marks and wishes to control their use.  Patricia Roberts Harris, Delta's first Executive Director, served as Ambassador to Luxembourg and was appointed to two cabinet positions by President Jimmy Carter (Secretary of Housing and Urban Development and Secretary of Health and Human Services).  Alexis M. Herman, a past Executive Board member, served as Secretary of Labor under President Bill Clinton. Barbara Jordan, a former National Treasurer of Delta, served in the United States House of Representatives with exceptional distinction.  Dr. Regina M. Benjamin is Surgeon General of the United States.  Marcia L. Fudge, a past President of Delta, is currently serving in the United States House of Representatives.

***Delta Vigorously Protects Its Trademarks***

18.     Delta owns, and has registered with the United States Patent and Trademark Office ("USPTO"), the Marks reflected in Exhibit 1, attached to this complaint.

19.     Delta also owns common law marks, including, among others, "Delta," "Delta Sorority," "DST," the Greek letter Δ, and 1913, when they are used with Delta's recognized colors, as reflected in Exhibit 2, attached to this complaint.

20.     Delta's Marks are indisputably strong and famous.

21.     Delta vigorously protects its Marks. Among other steps it takes to protect its Marks, Delta employs a staff member whose sole responsibility is to protect Delta's intellectual property, monitor its appropriate use, and pursue violators.   Delta has registered with the USPTO numerous Marks in numerous categories, the full list of which is readily available to the public on the USPTO website.

22.     Each year, Delta receives hundreds of requests from vendors seeking a license to sell products and merchandise imprinted with Delta's name(s) and/or its other many protected symbols or Marks.  Delta grants a license to only those vendors who meet Delta's licensing requirements.  Over the years, it has granted hundreds of such licenses. Licensed vendors actively compete for the limited available spaces to exhibit at Delta's national conventions and other events.

23.     Any person or entity interested in obtaining a license to use Delta's name or any of its Marks must complete an application.  If approved after careful review, the vendor must execute a License Agreement and agree to Delta's *Operating Guidelines and Code of Conduct for Vendors*. *See* Ex. 3 (License Agreement).  These documents make

clear the importance Delta attaches to its intellectual property, and the vendor's compliance obligations.

24.    The License Agreement provides, among other requirements, that the licensed vendor shall confine its sales of merchandise bearing Delta's Marks solely to Delta members and solely at Delta-approved events, and such sales shall occur solely during the term of the License Agreement; that it shall put in place safeguards designed to protect against unauthorized sales of merchandise bearing Delta's Marks, including sales to non-members; and that Delta has the right to inspect samples of designs and samples of any merchandise prior to its sale or distribution. The Guidelines, which are distributed with all licenses, reiterate the restrictions Delta imposes upon the use of its Marks.  Delta receives licensing fees, and in some cases, royalties, from its authorized vendors.

### *Defendants' Infringement of Delta's Marks*

25.    Defendants Bivins and Goins are the managing members of FratHouse Clothing.   Upon information and belief, Bivins and Goins are the legal owners of FratHouse Clothing.

26.    FratHouse Clothing sells clothing and other merchandise. Upon information and belief, FratHouse Clothing sells and displays images of its merchandise on its Facebook page and on its website located at www.frathouseclothing.com.

27.    Neither Bivens nor Goins, nor FratHouse Clothing has a license or authorization to use Delta's name or any of its Marks.  Not one of the Defendants has ever contacted Delta to seek a license or authorization to use Delta's name or any of its Marks.  Nevertheless, FratHouse Clothing, under the direction, control, and supervision

of Bivins and Goins, is marketing and selling merchandise bearing Delta's Marks ("Infringing Merchandise") without Delta's authorization, and unlawfully trading on Delta's name, reputation, goodwill, and the strength of member and public association of Delta Marks with Delta.

28.      Defendants intentionally, willfully, and deliberately advertised for sale on FratHouse Clothing's website and its Facebook, Twitter and Flickr accounts, *inter alia*, the following Infringing Merchandise:

    a.  T-Shirts bearing Delta's registered trademarks, including "ΔΣΘ" and "Delta Sigma Theta," and T-Shirts bearing Delta's common law Marks that historically have been used by Delta and associated exclusively with it, including "1913" and the Greek letter Δ, used in combination with Delta's colors.

    b.  Drawstring Bags bearing Delta's registered trademarks, including "ΔΣΘ," and drawstring bags bearing Delta's common law Marks that historically have been used by Delta and associated exclusively with it, including "1913" and the Greek letter Δ, used in combination with Delta's colors.

    c.  Tote Bags bearing Delta's registered trademarks, including "ΔΣΘ," and tote bags bearing Delta's common law Marks that historically have been used by Delta and associated exclusively with it, including "1913" and the Greek letter Δ, used in combination with Delta's colors.

29.      Upon information and belief, Defendants continue to use Delta's Marks and advertise and sell Infringing Merchandise, including to non-members of Delta.

30.      Upon information and belief, Bivins and Goins are the moving, active, conscious force behind FratHouse Clothing's infringement of Delta's marks.

31.      Upon information and belief, Bivins and Goins operated the website and Facebook, Twitter, and Flickr pages on which the Infringing Merchandise was offered for sale.

32.     Upon information and belief, Bivins and Goins personally have filled and fill orders for Infringing Merchandise, causing FratHouse Clothing to sell Infringing Merchandise.

### Notice to Defendants of Infringing Activities

33.     Delta notified Defendants of their infringing activities and demanded that they cease such activities.  By letter dated September 29, 2011, Delta, by and through its counsel, demanded that Defendants immediately cease and desist all infringement of Delta Marks.  A true and correct copy of Delta's September 29, 2011 cease and desist letter, including proof of its delivery, is attached to Exhibit 4 (Affidavit of Nicole Lenon Johnson) as Attachment A.

34.     On October 19, 2011, after Defendants failed to respond to Delta's September 29, 2011 letter, Delta sent a second cease and desist letter to Defendants, again directing Defendants to cease and desist all use of Delta's Marks.  A true and correct copy of the October 19, 2011 letter, including proof of its delivery, is attached to Exhibit 4 as Attachment B.

35.     On November 13, 2012, Delta sent a third cease and desist letter to Defendants, again demanding that they discontinue the unlawful use of Delta's Marks. A true and correct copy of the November 13, 2012 letter, including proof of its delivery, is attached to Exhibit 4 as Attachment C.

36.     Despite having been put on notice that it was infringing on Delta's Marks and despite having been directed to cease advertising for sale and selling the Infringing Merchandise, Defendants continue to use Delta's Marks illegally and continue to advertise and offer for sale merchandise that infringes on Delta's intellectual property

rights.  *See* Exhibit 4.  *See also* true and correct images of the Infringing Merchandise, attached as Exhibit 5.

37.    Defendants' acts have been willful, intentional, and with full knowledge and conscious disregard of Delta's rights in its Marks. Defendants have ignored and disregarded Delta's notices of their infringement of Delta's Marks and continue to engage knowingly in the unlawful use of Delta's Marks.  Defendant Bivins, the registered agent and a managing member of Defendant FratHouse Clothing, is an experienced corporate attorney who should understand the substance of the law (including Delta's trademark rights) and the consequences of Defendants' actions but nevertheless continues to willfully infringe Delta's Marks, including selling and advertising for sale Infringing Merchandise bearing Delta's Marks.  *See* Exhibit 5.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT UNDER SEC. 32(1) OF THE LANHAM ACT 15 U.S.C. § 1114(1)

38.    Delta repeats and realleges the allegations of paragraphs 1 through 37 above, as though fully set forth herein.

39.    Without Delta's authorization or consent, Defendants have used, and upon information and belief, continue to use Delta's Marks in commerce in a manner that is likely to cause consumer confusion with respect to the source and origin of the Infringing Merchandise and to deceive consumers as to the affiliation, connection, or association of Delta with Defendants and their products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40.    Defendants' acts have been deliberate, willful, and intentional, with full knowledge and in conscious disregard of Delta's rights in the Marks.

41.     As a direct and proximate result of Defendants' wrongful acts, Delta has suffered and continues to suffer damage to its Marks, reputation, and goodwill, as well as loss of revenue and monetary damages in an as-yet undetermined amount.

42.     Unless restrained, Defendants will continue to use Delta's Marks in violation of the law, and will cause irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

43.     Delta is entitled to recover Defendants' profits, as well as damages and costs, in accordance with 15 U.S.C. 1117(a).

44.     Because the trademark infringement in this case has been and continues to be willful, knowing, and egregious, Delta is entitled to an award of attorneys' fees pursuant to 15 U.S.C. 1117(a)(3).

## COUNT II

### FEDERAL TRADEMARK COUNTERFEITING UNDER SECTION 32(1) OF THE LANHAM ACT, U.S.C. § 1114(1)

45.     Delta repeats and realleges the allegations of paragraphs 1 through 44 above, as though fully set forth herein.

46.     Without Delta's authorization or consent, Defendants have used, and upon information and belief, continue to use Delta's Marks in commerce in a manner that is likely to cause consumer confusion with respect to the source and origin of the Infringing Merchandise and to deceive consumers as to the affiliation, connection, or association of Delta with Defendants and their products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

47.     Defendants' acts have been deliberate, willful, and intentional, with full knowledge and in conscious disregard of Delta's rights in the Marks.

48.     Defendants have infringed registered trademarks, in violation of 15 U.S.C. 1114(a)(1).

49.     Defendants have intentionally used and continue to use counterfeit marks as defined by 15 U.S.C. §1116(d)(1)(B), knowing such marks are and have been counterfeit marks, in connection with the sale, offering for sale, or distribution of goods, including clothing and other items bearing Delta's marks.

50.     As a direct and proximate result of Defendants' wrongful acts, Delta has suffered and continues to suffer damage to its Marks, reputation, and goodwill, as well as loss of revenue and monetary damages in an as-yet undetermined amount.

51.     Unless restrained, Defendants will continue to use Delta's Marks in violation of the law, and will cause irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

52.     Plaintiff is entitled to treble damages pursuant to 15 U.S.C. 1117(b), or in the alternative statutory damages pursuant to 15 U.S.C. 1117(c), as well as costs, for the use by Defendants of counterfeit marks in connection with the sale, offering for sale, or distribution of goods.

53.     Plaintiff should be awarded attorneys' fees pursuant to 15 U.S.C. 1117(a) in light of Defendants' knowing, willful, and egregious conduct.

## COUNT III

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT

54.     Delta repeats and realleges the allegations of paragraphs 1 through 53 above, as though fully set forth herein.

55.     Without Delta's consent and in violation of Federal common law, Defendants have used and continue to use Delta's Marks in commerce in a manner that is likely to cause consumer confusion with respect to the source and origin of the Infringing Merchandise and to deceive consumers as to the affiliation, connection, or association of Delta with Defendants and their products.

56.     Defendants' acts have been deliberate, willful, and intentional, with full knowledge and in conscious disregard of Delta's rights in the Marks.

57.     As a direct and proximate result of Defendants' wrongful acts, Delta has suffered and continues to suffer damage to its Marks, reputation, and goodwill, as well as loss of revenue and monetary damages in an as-yet undetermined amount.

58.     Unless restrained, Defendants will continue to use Delta's Marks in violation of the law, and will cause damage and irreparable harm to Delta.  Delta is without an adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

59.     Delta is entitled to recover from Defendants the actual damages that it sustained as a result of Defendant's wrongful acts, and is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

## COUNT IV

### DISTRICT OF COLUMBIA COMMON LAW TRADEMARK INFRINGEMENT

60.     Delta repeats and realleges the allegations of paragraphs 1 through 59 above, as though fully set forth herein.

61.     Defendants' use of Delta's Marks as described above has caused, is causing, and unless enjoined by the Court, will continue to cause confusion and mistake in the marketplace and deception of the public as to the affiliation, connection, or association of Delta with Defendants and their products.

62.     Defendants, with full knowledge of Delta's rights in the Marks and of the valuable goodwill associated therewith, have committed the acts alleged herein willfully, with the intent to trade off of, or in complete disregard of the goodwill associated with Delta's Marks.

63.     Defendants' acts complained of herein constitute trademark infringement in violation of the common law of the District of Columbia.

64.     Defendants' misuse of Delta's marks has impaired, is impairing and, unless enjoined by this Court will continue to impair Delta's reputation and dilute and tarnish the strength of Delta's Marks. Defendants have caused, are causing, and unless enjoined by this Court, will continue to cause injury and damage to Delta for which Delta is entitled to relief under the common law.

65.     Unless Defendants are restrained, Delta will continue to suffer damage and injury.

## COUNT V

### FEDERAL TRADEMARK DILUTION UNDER SEC. 43(c) OF THE LANHAM ACT
### 15 U.S.C. § 1125(c)

66.     Delta repeats and realleges the allegations of paragraphs 1 through 65 above, as though fully set forth herein.

67.     Delta's Marks are widely recognized by the general consuming public of the United States, and act as a source of designation.  Delta's Marks are inherently distinctive, and have acquired distinction through Delta's extensive, continuous, and exclusive use.

68.     Defendants' acts began long after the Delta Marks became distinctive and famous.

69.     Defendants' acts are likely to dilute the distinctive quality of the famous Delta Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

70.     By reason of Defendants' acts, Delta has suffered and will continue to suffer irreparable damage to Delta's trademarks, goodwill, and reputation and will sustain serious losses of revenues and profits.  Delta has already suffered monetary damages in an as-yet undetermined amount.

71.     Delta has no adequate remedy at law and is entitled to a preliminary and permanent injunction restraining Defendants from using Delta's marks in connection with the promotion, advertisement, or sale of any merchandise.

72.      Delta is entitled to recover from Defendants the actual damages that it sustained as a result of Defendants' wrongful acts, and is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

73.     Defendants' acts have been willful, with full knowledge and conscious disregard of Delta's rights in the marks.

74.     Because of the willful nature of Defendants' actions, Delta is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118.

## COUNT VI

### FEDERAL UNFAIR COMPETITION UNDER SEC. 43(a) OF THE LANHAM ACT
### 15 U.S.C. § 1125(a)

75.     Delta repeats and realleges the allegations of paragraphs 1 through 74 above, as though fully set forth herein.

76.     Defendants' acts falsely represent Defendants' products as affiliated, connected, associated with, sponsored, or approved with/by Delta, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Defendants' acts have caused, or are likely to cause confusion, mistake, or deception in relation to Delta and/or authorized products bearing the Delta Marks, or to result in the belief by purchasers and others that Defendants' products are connected with, sponsored by, or approved by Delta.

78.     Defendants' acts constitute unfair competition with Delta.

79.     Defendants' acts have been willful, intentional, or in reckless disregard of Delta's rights.

80.     By reason of Defendants' acts, Delta has suffered and will continue to suffer damage and injury to its business and reputation, and will sustain losses of revenues. Delta has already suffered monetary damages in an as-yet undetermined amount.

81.     Defendants' acts are greatly and irreparably damaging to Delta and will continue to damage Delta unless enjoined by this Court. Delta is without adequate remedy at law.

## COUNT VII

### DISTRICT OF COLUMBIA COMMON LAW UNFAIR COMPETITION

82.     Delta repeats and realleges the allegations of paragraphs 1 through 71 above, as though fully set forth herein.

83.     Defendants have been and are engaged in unlawful trade practices and acts of unfair competition in violation of the common law.

84.     The acts of Defendants complained of herein, including Defendants' unauthorized use of Delta Marks, constitute unfair competition in violation of the common law of the District of Columbia.

85.     As a result of the foregoing actions of Defendants, Delta has been injured and damaged.

### PRAYER FOR RELIEF

WHEREFORE, Delta prays that:

1.     Judgment be entered for Delta and against Defendants, jointly and severally on each claim pled in this Complaint;

2.     Defendants, their companies, agents, servants, employees, attorneys, and all others in active concert or participation with any of them, be enjoined and restrained, during the pendency of this action, and permanently thereafter, from:

      a.   Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale or selling any goods bearing any trade name, registered or common law trademark, trade dress, or service mark that is owned by or confusingly similar to Delta's Marks;

18

b. Falsely implying Delta's endorsement of Defendants' goods or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Delta, and from otherwise interfering with or injuring Delta's Marks or the goodwill associated therewith;

c. Engaging in any act that is likely to dilute the distinctive quality of Delta's Marks and/or injures Delta's reputation;

d. Representing or implying that Defendants are in any way sponsored by, affiliated with, endorsed, or licensed by Delta; and

e. Assisting, inducing, aiding or abetting any other individual or entity from engaging in or performing any of the activities referred to in paragraphs 2(a) through (d), above;

3. Defendants be required to file with the Court and serve upon Delta, within thirty (30) days after the entry and service of an injunction on Defendants, a written report made under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of such injunction;

4. Defendants be ordered to deliver to Delta for destruction, through Delta's counsel, all infringing merchandise, with all shipping and destruction costs to be borne by Defendants;

5. Defendants be required to pay an award of damages suffered by Delta according to proof at the time of trial or hearing;

6. Defendants be required to pay an award of damages in an amount three times the amount of Delta's damages or Defendants' profits, whichever is greater, pursuant to 15 U.S.C. § 1117, and/or pay an award of statutory damages to Delta pursuant to 15 U.S.C. § 1117(c) for Defendants' intentional and willful use of Delta's Marks;

7.      Defendants be required to bear the expense of an accounting to determine any and all of Defendants' profits resulting from Defendant's acts of infringement in violation of Delta's rights under the Lanham Act and the common law and that any such gains be paid to Delta and increased as the Court finds to be just under the circumstances of this case;

8.      Defendants be required to pay an award of punitive damages for the willful, intentional, deliberate, and wanton nature of Defendants' conduct;

9.      Defendants be required to pay pre-judgment interest on any recovery by Delta;

10.     Defendants be required to pay Delta's costs, expenses, and all applicable attorneys' fees; and

11.     Delta be able to recover such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Delta demands that this action be tried by a jury.

**[The Next Page is the Signature Page]**

Respectfully Submitted,

/s/ Devarieste Curry

_____

Devarieste Curry, # 384621
Marc Miller, # 948372
Elisabeth Kidder, # 987508
McLeod, Watkinson & Miller
One Massachusetts Avenue
Suite 800
Washington, D.C. 20001-0014

202-842-2345
202-408-7763 (facsimile)
dcurry@mwmlaw.com
mmiller@mwmlaw.com
lkidder@mwmlaw.com

Dated:  February 26, 2013