UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DELTA SIGMA THETA SORORITY,
INC.,

    Plaintiff,

v.                                                                                     Case No:  2:14-CV-147-FtM-38CM

LETISHA D. BIVENS, ALPHONSO
F. GOINS, and FRATHOUSE
CLOTHING, INC.,

    Defendants.
_____/

## **ORDER**[1]

This matter comes before the Court on Plaintiff Delta Sigma Theta Sorority, Inc.'s *ex parte* Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. #62) filed on March 25, 2014.  Plaintiff moves the Court for a temporary restraining order and preliminary injunction to enjoin Defendants from infringing on Plaintiff's trademarks and service marks (hereinafter "Marks"), and taking other actions that would frustrate Plaintiff's ability to pursue relief in this matter.  (Doc. #62).

## **BACKGROUND**

Plaintiff is a not-for-profit membership service organization founded in 1913 and is incorporated under the laws of the District of Columbia.  Plaintiff purports to own a

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

number of Marks and has registered many of them with the United States Patent and Trademark Office ("PTO").  Plaintiff further alleges that it has trademark rights for several unregistered Marks.

Plaintiff commenced the instant litigation (Doc. #1) against Defendants on February 26, 2013, in the United States District Court for the District of Columbia ("D.C. District Court").  Plaintiff alleges trademark infringement, counterfeiting, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C.§ 1051 *et seq.*, as well as several other common law claims.  After a jurisdictional review, the D.C. District Court transferred this case to this Court.[2]  (Doc. #58).  Before doing so, the D.C. District Court granted Plaintiff's previous motion for a temporary restraining order.  (Doc. #37). The court trice extended the temporary restraining order, the last of which expired on March 12, 2014, when the case was transferred here.  (Doc. #60).

As set forth in the Complaint, Plaintiff claims that Defendants have sold and are selling merchandise (e.g., tee shirts, polo shirts, tote bags, and drawstring bags) that bear its Marks or confusingly similar imitations thereof.  Plaintiff maintains that Defendants have placed such merchandise in interstate commerce via their website at www.frathouseclothing.com.  Plaintiff continues that Defendants have advertised the FratHouse website and available merchandise on Facebook, Twitter, Flicker, and

---

[2] Defendant FratHouse Clothing, LLC ("FratHouse") is a Florida limited liability company with a principal address of 1200 Goodlette Road #11533, Naples, Florida.  Defendant Letisha Bivens is an individual residing in Florida with an address of record of P.O. Box 11138, Naples, Florida 34101.  Defendant Goins is also an individual residing in Florida with an address of record of 1200 Goodlette Road #11533, Naples, Florida 34101.  Plaintiff alleges that Defendants Bivens and Goin are founding Managing Members of FratHouse, and that during the time of the alleged infringing activities at issue, they directed, controlled, and were the moving forces behind FratHouse's acts.

HBCUConnect.³  Finally, Plaintiff asserts that, even after commencing this instant litigation and the D.C. District Court issuing the prior temporary restraining order, Defendants continue to display tee shirt and bag designs with its Marks on their website and Facebook page as well as advertise merchandise on Facebook that infringes on its Marks.

## **DISCUSSION**

To obtain a temporary restraining order, a party must demonstrate (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) the entry of the relief would serve the public interest." Schiavo ex. rel Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b); see also M.D. Fla. Local Rule 4.05(a) ("Pursuant to Rule 65(b), Fed. R. Civ. P., temporary restraining orders may be issued without notice to be effective for a period of fourteen (14) days unless extended or sooner dissolved."). *Ex parte* temporary restraining orders should be "entered only in emergency cases to maintain the status quo until the requisite notice may be given and an opportunity is

---

³ Plaintiff identifies the following websites: Facebook (www.facebook.com/frathouseclothing), Twitter (twitter.com/FHC_Greek), Flicker (www.flicker.com/photos77736948@NO6), and HBCUConnect (www.hbcuconnect.com).

afforded to opposing parties to respond to the application for a preliminary injunction." M.D. Fla. Local Rule 4.05(a). For the following reasons, the Court finds that Plaintiff has met these four factors and is entitled to a temporary restraining order.

First, to prevail on trademark infringement and unfair competition claims under the Lanham Act, the plaintiff must show the defendant used its mark in commerce without its consent and the unauthorized use would likely confuse or deceive the public. See Fantasia Distrib., Inc. v. Southern Wholesale, LLC, No. 8:14-CV-407, 2014 U.S. Dist. LEXIS 19884, at *3-4 (M.D. Fla. Feb. 18, 2014) (citation omitted); see also Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement" (citation omitted)). Here, Defendant is using its Marks in commerce without consent, as Defendants are not amongst Plaintiff's select licensed vendors and Defendant's use of Plaintiff's Marks is likely to confuse consumers under the circumstances of this case. Plaintiff, therefore, is likely to prevail on the merits of its claims. More notably, Defendants have apparently continued to offer for sale merchandise allegedly bearing Plaintiff's Marks, despite the pendency of this suit and several cease and desist letters Plaintiff sent to Defendant. Plaintiff, therefore, has a substantially likelihood of prevailing on its trademark infringement and unfair competition claims under the Lanham Act.

Second, "[o]nce a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, a presumption of irreparable harm arises." Fantasia Distrib., 2014 U.S. Dist. LEXIS 19884, at *3-4 (citation omitted); see also BellSouth Adver. & Publ'g Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 784 (M.D. Fla. 1991)

("The law is well settled that the existence of a likelihood of confusion constitutes irreparable injury, as a matter of law, sufficient to satisfy the requirements of Federal Rule of Civil Procedure 65.").  As such, Defendants' alleged trademark infringement and unfair competition are offenses that, by their very nature, cause irreparable injury.  See Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989) ("It is generally recognized in trademark infringement cases that (1) there is not [an] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm.").  Even if irreparable injury is not presumed, Plaintiff has shown that it will suffer irreparable injury absent an injunction.  A temporary restraining order has been in effect since the start of this litigation.  Plaintiff has presented evidence that Defendants (1) have refused to cease using Plaintiff's Marks after receiving notice of infringement and cease and desist letters; and (2) did not fully comply with the prior temporary restraining order.  "Such willful conduct demonstrates a likelihood that Defendant would continue to harm Plaintiff's trademarks if the Court declined to issue an injunction."  Chanel, Inc. v. Purse Valley, No. 1:12-cv-22745, 2014 U.S. Dist. LEXIS 12218, at *16 (S.D. Fla. Jan. 31, 2014) (granting the plaintiff permanent injunctive relief where, among other things, the defendant "willfully infringed the Chanel [m]arks and continued to do so even after service of the Amended Complaint in this matter upon it").  Plaintiff also has shown that it will suffer irreparable injury to its goodwill and reputation due to the loss of control over products and merchandise bearing its Marks.  See id. (finding "[d]efendant's counterfeit products . . . create[d] irreparable harm and confusion, particularly because the counterfeit products b[ore] identical markings as [p]laintiff's genuine merchandise, and [were] not manufactured to Chanel's quality standards").

Moreover, Plaintiff has convincingly established that irreparable injury is so imminent that injunctive relief is necessary pending a hearing on its motion for a preliminary injunction and delaying such injunctive relief is impractical.

Third, Defendants will not suffer substantial harm from the Court granting Plaintiff's Motion. Defendants will be able to continue operating their business, as Plaintiff does not seek to enjoin all sales of Defendants' products, but only to halt sales of merchandise allegedly using Plaintiff's Marks.

Finally, protecting consumers from confusion and deception is in the public interest. See Teledyne Indust., Inc. v. Windmere Prod., Inc., 433 F. Supp. 710, 740 (S.D. Fla. 1977) (stating "customer confusion is by its very nature against the public interest"). This Court has long recognized the gravity of protecting the public in trademark infringement cases, stating

> [i]n a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount. . . . When a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his products' reputation.

BellSouth Adver., 792 F. Supp. at 785 (citations omitted). As such, granting Plaintiff the requested temporary restraining order will have no countervailing harm to the public.

Based on the Complaint, Motion for Temporary Restraining Order, and documents filed in support thereof, the Court finds the four-part test for injunctive relief has been satisfied and a temporary restraining order should be issued. Notice is unnecessary as Plaintiff has shown that immediate and irreparable damage will result to Plaintiff before the adverse party can be heard in opposition.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff's Motion for Temporary Restraining Order ([Doc. #62](Doc. #62)) is **GRANTED**. The Court defers ruling on Plaintiff's request for a preliminary injunction. This temporary restraining order will remain in effect until the Court rules on Plaintiff's Motion for a Preliminary Injunction, but in no event longer than fourteen (14) days.

(2) Defendants are temporarily **RESTRAINED, ENJOINED, and PROHIBITED** from:

   a. Manufacturing, distributing, marketing, advertising, promoting, transporting, disposing of, donating, or offering for sale, or otherwise distributing any merchandise that uses any of Plaintiff's registered or unregistered Marks as shown on the accompanying Schedules A and B, or any mark that is confusingly similar to Plaintiff's Marks.

   b. Hosting, acting as Internet Service Provider for, operating, or using any website to advertise, offer for sale, or sell any products bearing Plaintiff's registered or unregistered Marks, or linking any website or web content to any such website.

   c. Using any email address; email list; electronic bulletin board; listserv, etc., to offer for sale or sell any merchandise bearing Plaintiff's registered or unregistered trademarks.

   d. Falsely stating or implying Plaintiff's endorsement, support, or approval of the Defendants' merchandise or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of

7

      competition with Plaintiff, and from otherwise interfering with or injuring Plaintiff's Marks or the goodwill associated therewith.

   e. Representing or implying that Defendants are in any way sponsored by or affiliated with, or have been endorsed, approved, or licensed by Plaintiff.

   f. Secreting, destroying, altering, removing, or otherwise dealing with merchandise bearing Plaintiff's Marks, or any books or records of any type that contain any information relating to the manufacturing, producing, importing, exporting, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of merchandise that infringes upon Plaintiff's Marks.

   g. Effecting assignments or transfers, forming new entities or associations, or using any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in this Order.

   h. Selling or transferring ownership or control of FratHouse Clothing, LLC, www.frathouseclothing.com or the FratHouse Clothing Facebook, Twitter, or Flickr sites to any third party.

   i. Assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the preceding letter numbered paragraphs.

(3) In addition, Defendants shall remove, within twenty-four (24) hours of receiving this Order, all content from their FratHouse website (www.frathouseclothing.com), as well as FratHouse Clothing Facebook pages,

Twitter, and Flickr website depicting any of Plaintiff's registered or unregistered Marks, or any mark that is confusingly similar to any of Plaintiff's Marks.

(4) Defendants shall provide a copy of this Order to each of their agents, officers, employees, representatives, successors, assigns, and all other persons acting for, with, by, through, or under Defendants' authority, or in concert or participation with them with respect to the issues involved in this litigation and/or the activities of Defendant FratHouse Clothing, LLC.

(5) Plaintiff shall post a bond or cash in the amount of **$5,000.00**.  See FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

(6) A hearing on Plaintiff's Motion for a Preliminary Injunction will be held before the undersigned on **April 15, 2014, at 9:30 a.m.** at the United States Courthouse and Federal Building, Courtroom 5D, Fort Myers, Florida 33901.

(7) The Clerk of Court is directed to issue a separate notice of hearing and to forthwith mail a copy of this Order to Defendants at the last known address in the Court file.

**DONE** and **ORDERED** in Fort Myers, Florida this 1st day of April, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

10